UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN B. CHAFIN,

        Plaintiff,

                                    Case Number 04-10163-BC
v.                                      Honorable David M. Lawson

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO AFFIRM THE DECISION OF THE COMMISSIONER**

The plaintiff filed the present action on July 9, 2004 seeking review of the Commissioner's decision denying the plaintiff's claim for a period of disability, disability insurance benefits, supplemental security benefits under Titles II and XVI of the Social Security Act. The case was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse the decision of the Commissioner and award him benefits. The defendant filed a motion for summary judgment requesting affirmance of the Commissioner's decision.

Magistrate Judge Binder filed a report and recommendation on February 10, 2005 recommending that the plaintiff's motion for summary judgment be denied, the defendant's motion for summary judgment be granted, and the findings of the Commissioner be affirmed. The plaintiff filed timely objections to the recommendation, to which the defendant responded, and this matter is now before the Court.

The Court has reviewed the file, the report and recommendation, the plaintiff's objections and the defendant's response thereto, and has made a *de novo* review of the administrative record in light of the parties' submissions. The plaintiff's objections challenge the magistrate judge's conclusion that substantial evidence supports the decision of the Administrative Law Judge (ALJ) that the plaintiff is not disabled. The plaintiff alleged that he is disabled by impairments that cause both exertional and non-exertional limitations. He does not challenge the ALJ's finding concerning his exertional capacity, but he contends that his mental illness prevents him from performing substantial gainful activity. In particular, the plaintiff insists that the ALJ improperly accepted the opinion of consulting psychiatrist Dr. R. Hassan over the plaintiff's treating physician, Dr. Shelley Stettner, and incorrectly weighed evidence of the plaintiff's social activities and past work performance. The plaintiff made similar arguments in his motion for summary judgment, and he criticizes the manner in which those claims were addressed by the magistrate judge.

The plaintiff first filed an application for disability benefits on October 4, 1994, which was denied initially and not appealed further. Later, the plaintiff, who is now forty-nine, applied for a period of disability, disability insurance benefits, and supplemental security income benefits on May 22, 2001, when he was forty-five years old in two separate applications. In his application for supplemental security income benefits, the plaintiff alleged that his onset of disability was January 1, 1992 . The ALJ found an onset date of January 31, 2000 as alleged in the application for disability insurance benefits. The plaintiff did not argue in his motion for summary judgment or objections to the report and recommendation that this finding was improper. The government assumes that the earlier date is an error because the plaintiff worked throughout the 1990s. The

-2-

Court finds that the ALJ's onset date determination is supported by substantial evidence in the record.

The plaintiff worked approximately fourteen years as a laborer for various employers, some of the time working through a temporary employment agency. He held many of his positions for periods of two to four months, such as insulation installer, stock/shelf person, and general laborer. He worked longer periods of time as an employee for Pillsbury Chemical and Oil Company from 1986 to 1988 working with cleaning fluids for cutting and stamping machines, and a taxi driver from August 1998 to January 2000. The plaintiff claims to have held over 500 jobs, and served some time in the Army. Tr. at 153. He last worked on January 31, 2000, which was the date he alleged his disability began as a result of depression and back problems.

In his applications for benefits, the plaintiff alleged that he was unable to work due to mental illness and back problems. The applications were denied at the initial stages, and on August 20, 2003 the plaintiff appeared before ALJ J. Thomas McGovern for an administrative hearing when he was forty-seven years old. ALJ McGovern filed a decision on January 23, 2004 in which he found that the plaintiff was not disabled. The ALJ reached that conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. § 404.1520. The ALJ concluded that the plaintiff had not engaged in substantial gainful activity since January 31, 2000 (step one); the medical evidence in the plaintiff's case established that he has "severe" impairments consisting of an adjustment disorder and lower back pain (step two); the plaintiff does not have an impairment or combination of impairments that meet or equal a listing in the regulations (step three); and the

plaintiff could not perform his previous work, which ranged from semi-skilled to unskilled and required medium exertion (step four).

In applying the fifth step, the ALJ concluded that the plaintiff had the residual functional capacity to perform a significant range of light work. His limitations include the ability to sit or stand at will and occasional postural accommodations, no overhead work, and performing simple, unskilled work due to moderate limitations in his mental functioning. The ALJ used the Commissioner's medical vocational guidelines as a framework, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.21, and considered the testimony of a vocational expert, who stated that jobs including assembler, packager, inspector, and security monitor fit within the plaintiff's limitations and existed in significant numbers in the regional economy. After the ALJ found that the plaintiff was not disabled, the plaintiff requested the Social Security Appeals Council review the decision. The council denied the request on May 18, 2004 after considering additional evidence.

The plaintiff has the burden to prove that he is disabled and therefore entitled to benefits. *Boyes v. Sec'y of Health & Human Servs.,* 46 F.3d 510, 512 (6th Cir. 1994); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). Under 42 U.S.C. §§ 423(d)(1)(A) & (B) and 1382c(a)(3)(A) & (B), a person is disabled if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" and the impairment is so severe that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy." Further, "[a] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine disability, the Commissioner has prescribed the five-step process noted above and set forth in 20 C.F.R. §§ 404.1520 and 416.920. If the plaintiff has satisfied his burden through the first four steps of the analytical process, the burden shifts to the Commissioner to establish that the plaintiff possesses the residual functional capacity to perform other substantial gainful activity. *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). *See also Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980). "To meet this burden, there must be a finding supported by substantial evidence that plaintiff has the vocational qualifications to perform specific jobs." *Varley,* 820 F.2d at 779 (internal quotes and citations omitted).

As previously mentioned, the plaintiff alleges that a mental impairment renders him disabled within the meaning of the Social Security Act. Under the regulations in effect at the time of the administrative hearing, to evaluate a claim of disability based on mental impairment, the Commissioner was required to utilize a standard Psychiatric Review Technique Form, which must be completed by a medical consultant when initially reviewing an application and on reconsideration. The form must be completed at the administrative hearing level by a medical consultant or the ALJ based on medical information in the record. The standard form, completed by Dr. Hassan, the consulting psychiatrist, *see* Tr. at 100-13, was made part of the record pursuant to the statutory obligation established in 42 U.S.C. § 421(h), which is intended to insure that a qualified mental health professional evaluates a mental impairment and any applicable residual functional capacity before a determination of disability is made. In addition, pursuant to the statute, the Commissioner has prescribed rules for evaluating mental impairments. *See* 20 C.F.R. § 404.1520a. According to the prescribed procedure, the Commissioner first determines whether there is a medically determinable mental disorder specified in one of nine diagnostic categories. *See Ibid.*;

20 C.F.R. Pt. 404. Subpt. P, App. 1 § 12.00A. The clinical findings are referred to as the "A" criteria. Thereafter, the Commissioner measures the severity of a mental disorder in terms of functional restrictions, known as the "B" criteria, by determining the frequency and intensity of the deficits.

According to 20 C.F.R. § 404.1520a(c)(3), the "B" criteria require an evaluation in four areas with a relative rating for each area. Thus, the Commissioner must evaluate deficits in activities of daily living and social functioning and rate those on a five-point scale ranging through none, mild, moderate, marked, and extreme. Limitations in a third area – concentration, persistence, or pace – are rated on the same five-point scale. The fourth area – deterioration or decompensation in work or work-like settings – calls for a rating of never, one or two, three, and four or more. "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4). If the mental impairment has been determined to be "severe," the ALJ then determines whether the impairment meets one of the Commissioner's listings and at least two of the "B" criteria have been met, except in the cases of mental retardation and substance addiction disorders that use alternate "B" criteria tests. 20 C.F.R. § 404.1520a(d); 20 C.F.R. Pt. 404. Subpt. P, App. 1 §§ 12.00-.10. A claimant must be found to have conditions listed in the last two points of each of the scales in at least two of the "B" criteria in order to establish he "could not reasonably be expected to do any gainful activity." 20 C.F.R. Pt. 404. Subpt. P, App. 1 §§ 12.00. If the impairment is not disabling, but has been found to be "severe," the ALJ must perform a residual functional capacity assessment to determine whether the claimant is able to perform some jobs in spite of the mental limitations.

In this case, Dr. Hassan's notations on the form that he completed indicate that the plaintiff suffered from an affective disorder consisting of a depressive syndrome characterized by feelings of guilt or worthlessness. Tr. at 100, 103. As to functional limitations (the "B" criteria), Dr. Hassan found only "mild" limitations in activities of daily living; "moderate" limitations in maintaining social functioning; "moderate" deficiencies of concentration, persistence, or pace; and the number of episodes of decompensation at work was "none." None of these listings fell within the last two points of the respective scales, and therefore did not constitute a finding that the plaintiff's limitations were incompatible with work functions.

The plaintiff contests these findings with a variety of arguments. First, he says that Dr. Hassan's opinion should be disregarded in favor of that of Dr. Shelley Stettner, a psychiatrist who evaluated the plaintiff at Southwest Counseling and Development Services in June 2001. The plaintiff characterizes Dr. Stettner as a treating physician and contends that her opinion deserves controlling weight. Dr. Stettner did not provide a view of the plaintiff's functional limitations as such, but she did evaluate his global assessment of functioning (GAF) at 40. Tr. at 158. Dr. Hassan determined it to be 55 to 60. Tr. at 93-94. Both of these assessments were made at about the same time.

The GAF scale is reflected in Axis V of a differential diagnosis. "Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact, and in predicting outcome. The reporting of overall [psychological, social, and occupational] functioning of Axis V is done using the Global Assessment of Functioning (GAF) Scale." *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders – Text Revision 34* (*DSM-IV-TR*), 30 (4th ed. 2000). A GAF Scale of

71 to 80 indicates no more than slight impairment in areas such as social or occupational functioning; a scale of 70 to 61 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships; a scale of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with co-workers); a scale of 41-50 indicates serious symptoms e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job); a scale of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

The ALJ discounted Dr. Stettner's GAF opinion because he believed it was based on the plaintiff's substance abuse and did not reflect his current level of functioning. Tr. at 19. The plaintiff contends that the record does not support a substance abuse problem since the records of Dr. Stettner's clinic all show the plaintiff's substance abuse to be in remission, and therefore the ALJ's basis for rejecting the opinion "is demonstrably false." Pl.'s Obj. to R&R.[1]  The ALJ was prohibited from basing disability on substance abuse because of legislation enacted by Congress in

---

[1] The plaintiff failed to number the pages of any of his submissions, so the reference will be made only to the document.

1996, known as the Contract with America Advancement Act of 1996, which amended portions of the Social Security Act that defined disability for purpose of Title II and Title XVI benefits. Pub. L. 104-121 §§ 105(a)(1), 105(b)(1), 110 Stat. 847, 852-53 (1996) (codified at 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J) (West Supp. 2000)). Section 105 of that legislation, entitled "Denial of Disability Benefits to Drug Addicts and Alcoholics," states that:

> [a]n individual shall not be considered to be disabled for the purposes of this Title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

Regulations promulgated pursuant to this amendatory legislation prescribe a *sine qua non*, or "but for," test for determining whether alcoholism or drug addiction is a "contributing factor material" to a claimant's disability. If the claimant would still be disabled after he or she stopped using drugs or alcohol, then drug or alcohol abuse is not a contributing factor material to the disability. However, if the claimant's limitation is not disabling absent the abuse of alcohol or drugs, then the drug or alcohol abuse is a material contributing factor which precludes a finding of disability for the purpose of determining entitlement to benefits. *See* 20 C.F.R. §§ 416.935(b)(2)(i) & (ii).

The ALJ's finding that Dr. Stettner's determination of a GAF of 40 was tied to the plaintiff's substance abuse is supported by evidence in the administrative record. It is true that notes from Dr. K. Khajuria at the Cabrini Clinic dated January 16, 2002 state plaintiff's alcohol dependence is "in remission." Tr. at 168. However, the report of Dr. Stettner's psychiatric evaluation dated June 18, 2001 reads: "The patient does admit to using marijuana 'to relieve pain.'" Tr. at 156. She notes that he quit drinking in 1992, but "also abuses pain pills." *Ibid.* Her diagnosis was "[a]djustment disorder with mixed features. Rule out Polysubstance Abuse including marijuana and 'pain pills.' . . . GAF: 40. Prognosis: Guarded as the patient states that he is searching for needs and services,

although demonstrates really very little interest in obtaining any treatment for his conflicts or problems in his emotional life or relationships.  He also seems to be primarily concerned with SSI benefits at this time."   Tr. at 158-59.  The clinic's discharge form dated November 1, 2001 includes a recommendation for follow-up care to address substance abuse.  The "future services" recommended is for a "drug and alcohol rehabilitation program."  Tr. at 161-62.  It was reasonable for the ALJ to reach the conclusion that Dr. Stettner's GAF determination at 40 when accounting for substance abuse differed significantly with a contemporaneous GAF determination of 55 to 60 by Dr. Hassin without reference to substance abuse rendered drug abuse a contributing factor that precluded a finding of disability.

The plaintiff also argues that the finding that his impairment in maintaining social functioning was only "moderate" lacks record support because some of the activities to which the ALJ referred – playing cards and shooting pool – do not establish social functioning.  The card playing, says the plaintiff, refers to solitaire, and he has not shot pool since March 2001.  Pl.'s Obj. to R&R.  However, the ALJ also observed that the record contains evidence that the plaintiff spent time socializing with friends, going out to restaurants, and regularly attending church.  *See* Tr. at 18. Even disregarding the challenged factual grounds, substantial evidence supports the ALJ's determination that the plaintiff's impairment of social functioning is "moderate" and not "marked." There is no "marked" limitation where the plaintiff has not shown that the mental impairments "seriously interfere with the ability to function independently, appropriately and effectively." *Foster v. Bowen,* 853 F.2d 488, 491 (6th Cir. 1988).

Finally, the plaintiff contends that the conclusion that he suffered no incidents of decompensation in a work-like setting is undercut by proof of his inability to hold a steady job.  The

-10-

plaintiff did testify that he had over 500 jobs, a claim that even his own attorney admits is a gross exaggeration. However, he commented that most of his jobs were with temporary agencies as a laborer, Tr. at 52, which is one explanation for many jobs of short duration. He also told an evaluator at Southwest Counseling Services he "had over 500 jobs but longest time of employment was 23 months at age 30 or so, most jobs only last approximately six months or less due to chronic back pain." Tr. at 151. The plaintiff himself attributed his many job changes to a physical, not mental, impairment.

The ALJ could have inferred that the plaintiff's frequent job changes were due to decompensation at work. But that inference, while permissible, was not required. Instead, the ALJ inferred that the plaintiff's frequent job changes was not evidence of an impediment to substantial gainful activity and "that the claimant's allegation of inability to perform sustained work activity because of his symptoms is not credible." Tr. at 19. The ALJ, as the fact finder, is permitted to make these inferences even though a contrary inference also is supported by substantial evidence. *See Smith v. Sec'y of Health & Human Servs.,* 893 F.2d 106, 108 (6th Cir. 1989) (holding that where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion). The Sixth Circuit has stated that the role of the Court "is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). Therefore, the Court "may not try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

After a *de novo* review of the entire record and the materials submitted by the parties, the Court concludes that the magistrate judge properly reviewed the administrative record and applied

the correct law in reaching his conclusion. The Court did not consider the additional evidence submitted to the Social Security Appeals Council. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (holding that "where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision").

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation is **ADOPTED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 7] is **DENIED**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt # 8] is **GRANTED**. The findings of the Commissioner are **AFFIRMED**, and the complaint is **DISMISSED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 27, 2005

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 27, 2005.

s/Tracy A. Jacobs
TRACY A. JACOBS

---